IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SS SENIORS, LLC, ACCENT | § | |
| DEVELOPERS, LLC, AND | § | |
| NOORALLAH JOOMA, | § | |
|     *Plaintiffs* | § | |
| | § | CIVIL ACTION NO._____ |
| | § | |
| v. | § | |
| | § | |
| SULPHUR SPRINGS, TEXAS, | § | |
|     *Defendant.* | § | |

_____

**PLAINTIFFS' ORIGINAL COMPLAINT**

_____

Michael R. Goldman
State Bar No. 24025383
Guida, Slavich & Flores, P.C.
750 N. St. Paul Street, Suite 200
Dallas, Texas 75201
Telephone: (214) 692-0009
Facsimile: (214) 692-6610
Email: goldman@gsfpc.com

**ATTORNEY FOR PLAINTIFFS**
**SS SENIORS, LLC, ACCENT**
**DEVELOPERS, LLC AND**
**NOORALLAH JOOMA**

# TABLE OF CONTENTS

Page(s)

I.      STATEMENT OF THE CASE......................................................................4

II.     PARTIES ......................................................................................................5

III.    JURISDICTION AND VENUE ...................................................................6

IV.     FACTUAL BACKGROUND........................................................................7

        A.     CWA VIOLATIONS ........................................................................7

        B.     CONSTITUTIONAL VIOLATIONS................................................14

V.      CAUSES OF ACTION ................................................................................20

        COUNT 1: DISCHARGE OF POLLUTANTS TO SURFACE
        WATERS WITHOUT AN NPDES PERMIT IN VIOLATION
        OF THE CLEAN WATER ACT ...................................................................20

        COUNT 2: VIOLATION OF THE TERMS OF NPDES PERMIT NO.
        WQ0010372001 IN VIOLATION OF THE CLEAN WATER ACT ...........................22

        COUNT 3: DUE PROCESS VIOLATIONS...................................................22

        COUNT 4: DECLARATION THAT THE CONTIGENT FEE CONTRACT
        VIOLATES THE SEPARATION OF POWERS DOCTRINE IN THE TEXAS
        CONSTITUTION ...........................................................................................25

        COUNT 5: DECLARATION THAT THE CONTIGENT FEE
        CONTRACT, IF ANY, BETWEEN SULPHUR SPRINGS AND
        CANTEY & HANGER, LLP IS IN VIOLATION OF TEXAS LAW...........................26

        COUNT 6: DECLARATION THAT THE SULPHUR SPRINGS'
        LAWSUIT EXCEEDS THE LIMITS OF THE AUTHORIZING STATUTE ..............26

        COUNT 7: DECLARATION THAT THE STATUTORY PENALTIES UNDER
        SECTION 7.351 OF THE WATER CODE ARE A FORM OF EXEMPLARY
        DAMAGES....................................................................................................29

COUNT 8: EQUAL PROTECTION VIOLATIONS ......................................................30

VI.   JURY DEMAND .......................................................................................................34

VII.   ATTORNEY'S FEES ................................................................................................34

VIII.   REQUEST FOR RELIEF ..........................................................................................34

# TABLE OF AUTHORITIES

Page(s)

## CASE LAW

*Esso Standard Oil Co. v. Freytes*, 467 F. Supp. 2d 156, 162 (D.P.R. 2006),
    *aff'd*, 522 F.3d 126 (1st Cir. 2008) ................................................................24

## STATUTORY LAW AND RULES

28 U.S.C. §§ 1331, 1343, 1367, 1391, 2201, and 2202 ..........................................6, 7

30 Tex. Admin. Code § 335 .............................................................................17, 27, 31

33 U.S.C. §§ 1311, 1319, 1342, 1362, and 1365 ............................... 4, 6-9, 21, 22, 34,

40 C.F.R. Part 122, 135, and 261 .................................................4, 6, 8, 17, 27, 31

42 U.S.C. § 1983 .................................................................................5, 6, 22, 30, 35

Fed. R. Civ. P. 38 ....................................................................................................33

Tex. Const. art. II, § 1 ...........................................................................................25

Tex. Civ. Prac. & Rem. Code Ann. § 41 ...........................................................29, 20

Tex. Gov't Code Ann. §§ 2254, and 403.0305 .................................................26, 35

Tex. Health & Safety Code Ann. § 361.003 .....................................18, 26, 28, 32

Tex. Water Code Ann. §§ 7.053, 7.102, 7.351 and 30.0003 ...14, 17, 19, 26, 27, 29, 31, 32, 35

U.S. Const. amend. V, and XIV ...........................................................5, 20, 22, 24

## SECONDARY SOURCES

*Private Contingent Fee Lawyers and Public Power: Constitutional and
    Political Implications*, 18 Sup. Ct. Econ. Rev. 77, 79-80 (2010) ......................................16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SS SENIORS, LLC, ACCENT DEVELOPERS, LLC, AND NOORALLAH JOOMA, *Plaintiffs* | § § § § § § | |
| | § | CIVIL ACTION NO._____ |
| v. | § § | |
| SULPHUR SPRINGS, TEXAS, *Defendant.* | § § | |

_____

## PLAINTIFFS' ORIGINAL COMPLAINT
_____

COMES NOW SS Seniors, LLC ("SS Seniors"), Accent Developers, LLC ("Accent Developers") and Noorallah Jooma (collectively "Plaintiffs") by and through their undersigned counsel, and hereby file this Original Complaint against Sulphur Springs, Texas ("Sulphur Springs"), and would respectfully show the Court as follows:

## I.
## STATEMENT OF THE CASE

1.      Plaintiff SS Seniors brings this citizen's suit action under Section 505(a)(1) of the federal Clean Water Act ("CWA" or the "Act"), 33 U.SC §1365(a)(1) and in compliance with 40 C.F.R. Part 135, alleging that Sulphur Springs is in violation of its CWA permit and CWA effluent standards or limitations as referenced herein.   SS Seniors seeks the imposition of civil penalties, a declaratory judgment, and an award of costs, including attorney and expert witness fees, for Sulphur Springs' repeated and continuing violations and further seeks to compel compliance with the provisions of these statutes and rules promulgated thereunder.

2.      Plaintiffs SS Seniors, Accent Developers, and Noorallah Jooma collectively also

bring this action under the laws and Constitution of the United States, to obtain a judgment declaring, among other things, that: (a) Sulphur Springs has violated Plaintiffs' due process rights which are secured by the Fifth and Fourteenth Amendment by entering into an improper contingency fee contract with its outside counsel; and (b) Sulphur Springs' actions in the case styled *Sulphur Springs, Texas v. SS Seniors, LLC, et al*, CV-4205, in the 62nd Judicial District Court of Hopkins County, Texas ("Sulphur Springs' Lawsuit") have amounted to both discriminatory and selective enforcement in violation of Plaintiffs' rights which are secured by the Equal Protection Clause of the Fourteenth Amendment.   Plaintiffs have asserted several other claims related to the foregoing and seek their reasonable costs incurred in bringing this action, including attorneys' fees; consequential and compensatory damages for emotional distress, mental anguish, and harm to Plaintiffs' reputation; and punitive damages, as authorized by 42 U.S.C. § 1983, in an amount reasonable and appropriate.

## II.
## PARTIES

3.      SS Seniors, LLC is a limited liability company that is organized under the laws of the State of Texas.   Plaintiff SS Seniors, LLC has its principal place of business in the State of Texas.

4.      Accent Developers, LLC is a limited liability company that is organized under the laws of the State of Texas.   Plaintiff Accent Developers, LLC has its principal place of business in the State of Texas.

5.      Noorallah Jooma is a citizen and resident of Denton County, Texas.

6.      Sulphur Springs, Texas is a municipality in the State of Texas and may be served by serving the City Secretary, Gale Roberts, Municipal Building, 125 South Davis Street, Sulphur

Springs, Texas 75482.

### III.
### JURISDICTION AND VENUE

7.      This Court has exclusive jurisdiction over the subject matter of this action under Section 505 (a) of the Act, 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. § 1983.   This Court may exercise pendent jurisdiction over any of the Plaintiffs' state law claims on the basis of 28 U.S.C. § 1367.

8.      SS Seniors has complied with the notice requirements of the Act.   Section 505(b) of the Act requires that at least sixty days prior to commencing an action under Section 505(a) notice of the alleged violation be given to the party violating the Act, the Administrator of the United States Environmental Protection Agency (hereinafter "EPA"), the Regional Administrator of the EPA, and the Texas Commission on Environmental Quality (hereinafter "TCEQ").   33 U.S.C. § 1365(b)(1)(A).   On October 16, 2015, SS Seniors mailed a notice of its intent to file suit to stop Sulphur Springs' violations of its CWA permit and CWA effluent standards or limitations as referenced herein.[1]   The notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A.   More than 60 days have passed since the notice was served on Sulphur Springs and these agencies.

9.      Neither the EPA nor the TCEQ has commenced and is diligently prosecuting a civil or criminal action to redress the violations of Sulphur Springs.   In addition, neither EPA nor TCEQ has commenced an administrative civil penalty action under Section 309(g)(6) of the Act, 33 U.S.C. § 1319(g)(6), or under a comparable Texas law, to redress the violations of the CWA by Sulphur Springs.

---

[1] *See* Exhibit A (Bates Nos. SS 000001-000156).

10.     SS Seniors will, immediately upon receipt of a file-stamped copy of this Complaint, mail a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of the EPA Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

11.     Venue is proper in the United States District Court for Eastern District of Texas, Sherman Division, pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(b)(1), because the source of the violations is located within the district as well as under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in the Eastern District of Texas in Hopkins County, Texas.   The amount in controversy is in excess of the minimum jurisdictional limits of this Court.

**IV.**
**FACTUAL BACKGROUND**

**A.     CWA VIOLATIONS**

12.     SS Seniors is a limited liability company organized under the law of the State of Texas, is authorized to do business in the State of Texas, and constitutes a citizen within the meaning of Section 505 of the CWA, 33 U.S.C. §1365.   SS Seniors conducts business operations in Sulphur Springs, Texas.

13.     Sulphur Springs is an incorporated municipality created by and pursuant to the Texas Local Government Code as recognized by Section 504(4) of the CWA, 33 U.S.C. §1362(4), and constitutes a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. §1362(5).

14.     Sulphur Springs provides wastewater treatment services within its jurisdiction. The City of Sulphur Springs owns and operates a wastewater treatment facility located at 360 Thomas Road, Sulphur Springs, Texas and is the owner and/or operator of the associated sanitary

sewer pipe and conveyance system underlying portions or all of Sulphur Springs, all such parts of which constitute a publicly-owned treatment work or "POTW" as defined in 40 C.F.R. §122.2 (collectively the "Sanitary Sewer System").

15.     Sulphur Springs is authorized to operate the wastewater treatment facility pursuant to a federal National Pollutant Discharge Elimination System Permit No. WQ0010372001 ("CWA Permit") issued under Section 402 of the CWA, 33 U.S.C. §1342.[2]  In connection with such authorization, Sulphur Springs is required, among other things, to administer a pretreatment program designed to ensure compliance with Sulphur Springs' CWA Permit conditions.

16.     Section 505 of the CWA provides that any citizen may commence a civil action on his own behalf against any "person" who is alleged to be in violation of "an effluent standard or limitation" under the CWA.   33 U.S.C. §1365(a)(1).

17.     Sulphur Springs' CWA Permit imposes certain conditions, including without limitation:

> **Permit Conditions 2.b**.   The permittee has a duty to comply with all conditions of the permit.   Failure to comply with any permit condition constitutes a violation of the permit and the Texas Water Code or the Texas Health and Safety Code, and is grounds for enforcement action, for permit amendment, revocation, or suspension, or for denial of a permit renewal application or an application for a permit for another facility.

> **Permit Conditions 2.d**.   The permittee shall take all reasonable steps to minimize or prevent any discharge or sludge use or disposal or other permit violation that has a reasonable likelihood of adversely affecting human health or the environment.

> **Permit Condition 2.g**.   There shall be no unauthorized discharge of waste or any other waste.   For the purpose of this permit, an unauthorized discharge is considered to be any discharge of wastewater into or adjacent to water in the state at any location not permitted as an outfall or otherwise defined in the Other Requirements section of this permit.

---

[2]  *See* Exhibit A, Permit No. WQ0010373001 issued February 10, 2011 by the TCEQ pursuant to its authority delegated by the EPA under the CWA (Bates Nos. SS 000011-000072).

**Operational Requirements 1.**  The permittee shall at all times ensure that the facility **and all of its systems of collection, treatment, and disposal** are properly operated and maintained.   (emphasis added)

**Sludge Provisions.**  The permittee is authorized to dispose of sludge only at a TCEQ authorized land application site or co-disposal landfill.

18.    All of Sulphur Springs' CWA Permit conditions, including those referenced above, constitute effluent standards or limitations as defined by Section 505(f)(6) of the CWA, 33 U.S.C. §1365(f)(6).[3]

19.    Available public records from the TCEQ document that Sulphur Springs has a history of complaints concerning sewage problems, sewage overflows, illicit discharges of sewage, and illicit discharges into the Sanitary Sewer System.

20.    Moreover, available public records from the TCEQ document over twenty (20) known violations by Sulphur Springs of its CWA Permit effluent limitations for one or more parameter in the last five (5) years.   At least one of these violations resulted in entry of an Agreed Order between the City of Sulphur Springs and the Texas Commission on Environmental Quality resolving violations of effluent limits for Carbonaceous Biochemical Oxygen Demand, Ammonia Nitrogen (both daily average and daily maximum concentration).[4]

21.    Sanitary sewer overflows ("SSOs"), which constitute violations of the CWA, are under heightened scrutiny nationwide due to the serious threat posed to human health and the environment.   The U.S. Environmental Protections Agency has identified SSOs as one of its highest priorities, and has issued a National Enforcement Initiative concerning SSOs that notes:

Raw sewage overflows and inadequately controlled stormwater discharges from

---

[3] For purposes of citizen's suit authority, "effluent standard or limitation under [the CWA]" includes "a permit or condition thereof issued under section [502 of the CWA]…" 33 U.S.C. §1365(f)(6).
[4] *See* Exhibit B (Bates Nos. SS 000157-000167).

municipal sewer systems introduce a variety of harmful pollutants, including disease causing organisms, metals and nutrients that threaten our communities' water quality and can contribute to disease outbreaks, beach and shellfish bed closings, flooding, stream scouring, fishing advisories and basement backups of sewage.

EPA is taking enforcement action at municipal sewer systems with Clean Water Act violations to reduce pollution and volume of stormwater runoff and to reduce unlawful discharges of raw sewage that degrade water quality in communities.[5]

22.     The EPA has stated in its "SSO Fact Sheet," that neighborhoods that experience chronic SSOs or perceived impairments to water quality drop in value.   SS Seniors is the owner of property located at 668 Gossett Street, Sulphur Springs, Texas 75482 on which an 80 unit high density, low income senior citizens residence is located ("the SS Seniors property" or "Pioneer Crossing Project").

23.     In addition to adversely impacting property values, sanitary sewer overflows contain sewage pathogens that have been linked to many illnesses.   According to the EPA, such organisms that may be present in sewage include viruses, protozoa such as cryptosporidium, bacteria such as *Escherischia coli*, and helminthes.   These organisms could potentially have a serious and detrimental impact on the quality of health of the senior citizens residing in the Pioneer Crossing Project.

24.     The SS Seniors property is fronted by a sewer line owned and operated by Sulphur Springs as part of its Sanitary Sewer System.   SS Seniors is a customer of Sulphur Springs and a user of the Sanitary Sewer System.

25.     Sulphur Springs has an aging Sanitary Sewer System with 140 miles of wastewater lines that, upon information and belief, is plagued by infiltration and blockages, and is sorely in

---

[5]       http://www2.epa.gov/enforcement/national-enforcement-initiative-keeping-raw-sewage-and-contaminated-stormwater-out-our

need of a system-wide upgrade.  As with many small municipalities, Sulphur Springs must prioritize municipal projects by budgeting accordingly.  Sulphur Springs' own website acknowledges the necessity of improving its sewer system by stating:  "We will continue sewer system and manhole rehabilitation working towards the goal of having zero sewer overflows." Unfortunately, that goal is nowhere near being realized at this time and is likely to require significant capital repairs, upgrades, and expansions of the Sanitary Sewer System.

26.     Sulphur Springs has failed to comply with its CWA Permit (*i.e.* applicable effluent limitations and standards) by allowing its Sanitary Sewer System to fall into, and remain in, serious disrepair, and allowing introduction of surface waters and pollutants into the Sanitary Sewer System, and discharge of raw untreated sewage into and on surface areas, and receiving waters in violations of the CWA Permit discharge standards.   On information and belief, Sulphur Springs has taken only temporary stop-gap measures to address SSOs as they occur rather than implementing the necessary system-wide improvements.   As a result, such violations are continuing in nature, and will continue in the future unless corrected.  The low income senior citizen residents at Pioneer Crossing will continue to potentially have negative impacts on their health.   SS Seniors, as an owner of high density low income senior citizens apartment complex is adjacent to, and a user of, the Sanitary Sewer System is, and will be, affected by these violations.

27.     On reasonable belief, the poorly maintained condition of the Sanitary Sewer System is indicative of Sulphur Springs' likely violations of its CWA Permit on a continuing system-wide basis throughout its service area, including immediately adjacent to the SS Seniors Property.   A review of the official minutes of the publicly available "Regular Meeting of the City Council" of Sulphur Springs serve as evidence of a continuous and significant pattern of sanitary sewer main blockages, as well as claims by persons harmed by sanitary sewer overflows over the last seven

years (7).   A sampling of those recorded issues shown in the minutes include:

- **Minutes of August 4, 2015**: "Unstopped 14 sewer mains;"   "Repaired 5 water main ruptures."

- **Minutes of May 5, 2015**:   "Unstopped 47 sewer mains;" "Repaired 9 smaller sewer mains;" "Made a major sewer repair to a 24" sewer main passing under College Street which required a new bore."

- **Minutes of January 6, 2015**:   "Two liability Claims were filed against the City in December, one for a sewer overflow…"

- **Minutes of November 4, 2014**:   "Unstopped 12 sewer mains;"   "Repaired 21 sewer mains."

- **Minutes of September 3, 2013**:   "Repaired 30 water main ruptures;" "Unstopped 12 sewer mains;" "Repaired 7 sewer mains."

- **Minutes of December 4, 2012**:   "TML paid one liability claim on the City's behalf for a sewer overflow in a commercial building that was caused by one of our sewer cleaning crews;" "Unstopped 24 sewer mains."

- **Minutes of May 3, 2011**:   "We had one liability claim for sewer flooding in a home on Church Street that occurred while City crews were cleaning the sewer main;"   "Unstopped 21 sewer mains."

- **Minutes of January 6, 2009**:   "Unstopped 24 sewer lines."

- **Minutes of November 4, 2008**:   "Unstopped 18 sewer mains;" "Repaired 6 sewer mains."

- **Minutes of June 3, 2008**:   "We received 2 liability claims in May; both were for damages resulting from sewer blockages;" "Unstopped 24 sewer mains."

- **Minutes of Special Meeting January 8, 2008**:   "A resident on Moore Street seeks monetary damages from a sewer overflow;"   "Unstopped 60 sewer mains."[6]

28.   Additionally, in the Fiscal Year 2014-2015 Annual Budget "Budget Message"

---

[6] *See* Exhibit A (Bates Nos. SS 000073-000139).

dated September 1, 2014, Sulphur Springs indicated that the wastewater treatment plant needs to be modernized to the cost of approximately $12 million, and that the modernization is driven by increased loads and "attention from the EPA and TCEQ."[7]   Sulphur Springs' Sanitary Sewer System almost constantly has blockages city-wide, has periodic sanitary sewer overflows substantial enough to cause citizens to make damages claims against Sulphur Springs, and clearly has the potential to cause pollutants to enter surface waters of the state and/or cause effluent limit violations at the wastewater treatment plant.   Additionally, Sulphur Springs appears to have weighed the cost of correcting its violations against the level of "attention" it has received from the EPA and the TCEQ.

29.      To date, SS Seniors is unaware that any formal enforcement action has been by the EPA or the TCEQ to cause Sulphur Springs to take actions to cease its SSOs in violation of the CWA and the CWA Permit.   In particular, no federal or state action has been instituted to compel Sulphur Springs to take actions to prevent SSOs onto or near the SS Seniors Property or into or adjacent to the creek running near the SS Seniors Property.

30.      Because neither the EPA nor the TCEQ has yet undertaken enforcement against the City of Sulphur Springs for its violations of Section 301 of the CWA and of its CWA Permit, this citizen's suit is appropriate.

31.      Finally, based on available data, approximately 22.5% of the population of Sulphur Springs lives at or below the poverty level.   Accordingly, Environmental Justice concerns are high for the population served by Sulphur Springs' Sanitary Sewer System and especially for the low income senior citizens residing at Pioneer Crossing.

---

[7] *See* Exhibit C (Bates Nos. SS000168-000170).

**B.      CONSTITUTIONAL VIOLATIONS**

32.      On January 15, 2015, Defendant filed suit against Plaintiffs (and others) in Hopkins County under Section 7.351 of the Texas Water Code claiming it is entitled to civil penalties of up to $25,000 per day for Plaintiffs' (and others) alleged violations of the Texas Solid Waste Disposal Act ("SWDA") and Stormwater Permitting Requirements, plus attorney's fees.[8]

33.      The nature of the claims and the relief requested in the Sulphur Springs' Lawsuit leave no doubt that it is a coercive action brought to punish Plaintiffs (and others) as Sulphur Springs seeks to impose the maximum punishment allowed by law for each alleged violation.

34.      Section 7.351 permits governmental units, such as Sulphur Springs, to act "in the same manner as" the TCEQ in enforcing Texas environmental laws.   It does not, however, empower governmental units to outsource this enforcement authority to private lawyers hired pursuant to an ad hoc contingency-fee arrangement who act in ways that violate a party's constitutional rights and especially does not act "in the same manner as" the TCEQ.

35.      Texas governmental units, such as Sulphur Springs, have a responsibility to see that justice is done for all, including persons, like Plaintiffs, that have been targeted for prosecution. In prosecuting actions to recover civil penalties, Sulphur Springs is obligated to serve the public interest; in some cases, the public interest may call for limiting the scope of the action or abandoning the action altogether rather than seeking to maximize the amount of civil penalties.

36.      Nonetheless, on June 12, 2014, Sulphur Springs executed an engagement agreement with Scott & Ray, PLLC (hereinafter, "Contingent Fee Contract") which granted outside contingency counsel a stake in the outcome of the Sulphur Springs' Lawsuit in

---

[8] *See* Exhibit D, Plaintiff's Third Amended Petition (Bates Nos. 000171-000187).

consideration of their agreement to prosecute that action.[9]

37.     On January 22, 2016, Sulphur Springs produced a copy of the Contingent Fee Contract as well as redacted attorney billing invoices through September 2015.[10]  This was the first time that Plaintiffs became aware of Contingent Fee Contract and that contingency-counsel were purportedly billing at $950/hour – a rate that is unconscionably higher than ordinarily charged for similar work by similarly qualified counsel.   Plaintiffs also learned at that time that Sulphur Springs' outside counsel had billed $501,498.46 through September 2015 on the Sulphur Springs' Lawsuit.   It should be noted that the Sulphur Springs' Lawsuit had been stayed by agreement between the parties prior to that time with no depositions or other meaningful discovery having occurred so that the parties could participate in mediation.   Sulphur Springs' counsel recently produced additional redacted invoices from September 2015 through January 2016 which confirmed that the total amount billed to date is now a staggering $730,275.27.[11]   There still has not been a single deposition in the case and only one hearing for entry of a scheduling order has occurred.

38.     Several provisions in the contingent-fee arrangement actually promote inefficient litigation strategies and incentivize contingency-counsel to needlessly drag the lawsuit out as long as possible so that they can seek greater amounts in attorney's fees at trial.   That is why Sulphur Springs' contingency-counsel are billing this matter at **$950/hour** and have incurred at least **$730,275.27** prior to the first deposition.   The extremely high billing rate and unreasonably high attorney's fees incurred to date (in relationship to the posture of the case) is clear of evidence of

---

[9] *See* Exhibit E (Both Scott &Ray, PLLC and Cantey Hanger, LLP represent Sulphur Springs in the Sulphur Springs Lawsuit.   Sulphur Springs has not produced its engagement agreement with Cantey Hanger, LLP) (Bates Nos. 000188-000197).
[10] *See* Exhibit F (Bates Nos. 000198-000240).
[11] *See* Exhibits F and G (Bates Nos. 000198-000272).

the overreaching and violation of due process by Sulphur Springs.

39.     By its actions or inaction, Sulphur Springs has also ceded control over the prosecution of the Sulphur Springs' Lawsuit to its contingency-fee counsel.   Contingency-fee counsel are listed as the attorney-in-charge.   By virtue of their role in the Sulphur Springs' Lawsuit, contingency-fee counsel have made or influenced a decisions about the prosecution, large and small.

40.     To date, contingency-fee counsel have handled all appearances related to the Sulphur Springs' Lawsuit.   Sulphur Springs' City Attorney did not appear at the one hearing that has occurred in the Sulphur Springs' Lawsuit and is not listed as counsel of record on any pleadings. In addition, all relevant correspondence and other communications have come from contingency-fee counsel.

41.     The contingency-fee arrangement between Sulphur Springs and contingency-fee counsel has injected personal financial interest into the prosecution of the Sulphur Springs' Lawsuit.   Indeed, "[a]s any lawyer knows, under a contingency-fee arrangement an attorney effectively bets everything on attainment of victory in litigation." Martin H. Redish, *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 Sup. Ct. Econ. Rev. 77, 79-80 (2010).

42.     Under the contingency-fee arrangement, contingency-fee counsel stand to gain substantial amounts of money based on the outcome of the Sulphur Springs' Lawsuit; these gains would be derived from any civil penalties recovered on behalf of Sulphur Springs from Plaintiffs as well as their inflated attorney's fees. The contingency-fee arrangement thus creates a powerful incentive for contingency-fee counsel to focus single-mindedly on maximizing the amount of civil penalties recovered and attorney's fees incurred from Plaintiffs.

43.     Moreover, because of their financial stake in the outcome of the Sulphur Springs' Lawsuit, contingency-fee counsel are disinclined to exercise restraint, such as by limiting the scope of the action if it would advance the public interest to do so and at times have acted with personal vindictiveness.

44.     For instance, contingency-counsel (on behalf of Sulphur Springs) have singled out Mr. Jooma for individual prosecution in the Sulphur Springs' Lawsuit even though they have not proceeded against any other individual similarly situated.   Mr. Jooma is a US citizen originally from Pakistan and was born to Muslim parents and had no involvement in his individual capacity with the construction of the site.   The selectivity of Mr. Jooma was intentional, invidious, and based on impermissible considerations such as Mr. Jooma's race and religion.   Alternatively, the decision to single out Mr. Jooma was irrational and wholly arbitrary.   In effect, an illegitimate animus or ill-will motivated Sulphur Springs to intentionally treat Mr. Jooma differently from others similarly situated and no rational basis exists for such treatment.

45.     The contingency-counsel (on behalf of Sulphur Springs) have also exceeded their authority under Section 7.351(a) of the Texas Water Code.   In fact, Sulphur Springs has asserted claims in the Sulphur Springs' Lawsuit the likes of which have never been advanced in the history of Texas environmental litigation by the State of Texas through the TCEQ.

46.     Specifically, Sulphur Springs claims that Plaintiffs (and others) violated the SWDA because they failed to obtain the appropriate permits for the discharge of stormwater from the Pioneer Crossing Project.[12]   In making this claim, Sulphur Springs must necessarily argue that the stormwater from the site was regulated under the TCEQ's Industrial Solid and Municipal

---

[12] *See* Exhibit D, page 9-12 (Bates Nos. 000180-000183).

Hazardous Waste Rules under 30 Tex. Admin. Code § 335.   However, Section 335.1(140)(a)(iv) states that "solid waste" does not include materials excluded by 40 C.F.R. §§ 261.4(a) and that provision excludes industrial wastewater discharges subject to regulation under Section 402 of the Clean Water Act.   Indeed, as asserted by Sulphur Springs itself elsewhere in its claims against Plaintiffs, stormwater from large construction sites is industrial wastewater subject to the Section 402 Clean Water Act permit program.   The TCEQ has never taken the position of Sulphur Springs at any construction site in the State of Texas and it is noteworthy that the State of Texas has recently retracted its support of these claims in the Sulphur Springs' Lawsuit.

47.     Sulphur Springs also claims that the stormwater that allegedly entered the sanitary sewer system was likewise a violation of the SWDA.   Assuming, *arguendo*, that the stormwater qualified as "solid waste," the SWDA nonetheless contains a "Domestic Sewage Exclusion" which clearly states that once a substance enters a sanitary sewer system, that is part of a POTW, it is no longer qualifies as "solid waste."[13]   Once again, The TCEQ has never taken the position of Sulphur Springs at any construction site in the State of Texas.

48.     Further, when Sulphur Springs built its own municipal airport, it did not obtain the very same permits for itself that it now claims, in error, Plaintiffs should have obtained.[14]   That is additional evidence that Sulphur Springs has greatly exceeded the boundaries of the underlying statutory schemes.

49.     In addition, Sulphur Springs claims that SS Seniors, Accent Developers, and Mr. Jooma were also "primary operators" in an effort to seek $25,000/day penalty a day for failure to

---

[13] TEX. HEALTH & SAFETY CODE § 361.003(34)(A)(i) (the term solid waste "does not include ... solid or dis-solved material in domestic sewage").
[14] *See* Exhibit H (Bates Nos. 000273-000274).

timely file a Notice of Intent ("NOI") for over 100 days (totaling $2,500,000) in order to obtain coverage under a stormwater permit from the TCEQ.[15]   The State of Texas disagrees with Sulphur Springs on this issue.[16]   Instead the State of Texas concluded that SS Seniors, Accent Developers and Mr. Jooma qualify only as "secondary operators."   Under the TCEQ penalty policy, the total penalty applicable to Plaintiffs for failure to file an NOI as a secondary operator is *de minimis* – instead of $2,500,000 as claimed by Sulphur Springs' contingency-counsel.

50.     Finally, in an effort to bring in irrelevant evidence, Sulphur Springs claims that Section 7.053 of the Texas Water Code concerning the "Factors to be Considered in Determination of Penalty Amount" is applicable.[17]   The State of Texas disagrees with Sulphur Springs on this issue as well.[18]

51.     Simply put, the contingency-fee arrangement amounts to a biasing influence, which, among other things, increases substantially the risk of overzealous prosecution by a local governmental entity that purports to stand in the shoes of the State of Texas.

52.     The contingent-fee arrangement gives private counsel a significant stake in the outcome, resulting in the prosecution of this case being guided by the profit motivations of contingency-fee counsel, rather than the public interest or Plaintiffs' purported culpability.   This in turn has compromised the integrity of the prosecution by Sulphur Springs as well as the public's faith in the judicial process.   The right of SS Seniors and Accent Developers to their continued operations and existence has been threatened by the Sulphur Springs Lawsuit.   In addition,

---

[15] *See* Exhibit I, Sulphur Springs' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. 000275-000277).
[16] *See* Exhibit J, State of Texas' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. SS 000278-000281); Exhibit K, State of Texas Response to Requests for Admissions No. 69 by SS Seniors, LLC, Accent Developers, LLC and Noorallah Jooma (Bates Nos. SS 000282-000285).
[17] *See* Exhibit L (Bates Nos. 000286-000290).
[18] *See* Exhibit M (Bates Nos. 000291-000293).

Plaintiffs are mismatched in their legal resources as compared to Sulphur Springs.

53.     The contingent-fee arrangement has caused the contingency-counsel to disregard the heightened standards to which a lawyer performing government functions is subject. The pernicious consequences of the contingency-fee arrangement are exacerbated by contingency-fee counsel's lack of public accountability.

54.     Under these circumstances, contingency-fee counsel's participation in the Sulphur Springs' Lawsuit offends the requirement of fundamental fairness embodied in the Due Process Clause of the Fifth and Fourteenth Amendment. On information and belief, Sulphur Springs intends to permit contingency-fee counsel to continue leading the prosecution of the Sulphur Springs' Lawsuit in the future.

55.     Sulphur Springs' actions referenced herein have also amounted to both discriminatory and selective enforcement in violation of Plaintiffs' rights which are secured by the Equal Protection Clause of the Fourteenth Amendment.

**V.**
**CAUSES OF ACTION**

**COUNT 1:     DISCHARGE OF POLLUTANTS TO SURFACE WATERS WITHOUT AN NPDES PERMIT IN VIOLATION OF THE CLEAN WATER ACT**

56.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

57.     As stated above, Sulphur Springs has failed to comply with its CWA Permit (i.e. applicable effluent limitations and standards) by allowing its Sanitary Sewer System to fall into, and remain in, serious disrepair, and allowing introduction of surface waters and pollutants into the Sanitary Sewer System, and discharge of raw untreated sewage into and on surface areas, and receiving waters in violations of the CWA Permit discharge standards.

58.     On information and belief, Sulphur Springs has taken only temporary stop-gap measures to address SSOs as they occur rather than implementing the necessary system-wide improvements.  As a result, such violations are continuing in nature, and will continue in the future unless corrected.  SS Seniors, as an owner of property adjacent to, and a user of, the Sanitary Sewer System is, and will be, affected by these violations.

59.     The discharges of pollutants from a point source referenced above required an NPDES Permit authorizing such discharges.  Sulphur Springs has violated Section 301(a) of the CWA, 33 U.S.C. §1311(a) and should be subject to an enforcement order or injunction ordering Sulphur Springs to cease its discharges of pollutants without an NPDES permit authorizing such discharges.

60.     Sulphur Springs should be subject to the assessment of civil penalties for these violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365. Such penalty amounts shall include, without limitation, the immense economic benefit Sulphur Springs has enjoyed by not undertaking the City-wide improvements to the Sanitary Sewer System to prevent SSOs.   Sulphur Springs should be responsible for reimbursement of SS Seniors' litigation costs in bringing this citizen's suit claim pursuant to Section 505(d) of the CWA, 33 U.S.C. §1365(d).

61.     For the purpose of assessing the maximum penalty which Sulphur Springs is liable, each day that Sulphur Spring has discharged pollutants without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

62.     SS Seniors also seeks a declaration that Sulphur Springs should be subject to civil

penalties for its violations of the CWA in the amount of $37,500 per day, per violation, for a total amount to exceed $1,000,000.00.

**COUNT 2: VIOLATION OF THE TERMS OF NPDES PERMIT NO. WQ0010372001 IN VIOLATION OF THE CLEAN WATER ACT**

63. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

64. As set forth above, Defendant Sulphur Springs has violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as rules implementing the Act, by prohibited sewage overflows, illicit discharges of sewage, and illicit discharges into the Sanitary Sewer System.

65. Defendant Sulphur Springs should be subject to an enforcement order or injunction ordering Sulphur Springs to cease its violations of NPDES Permit WQ0010372001.

66. SS Seniors also seeks a declaration that Sulphur Springs should be subject to civil penalties for its violations of the CWA in the amount of $37,500 per day, per violation, for a total amount to exceed $1,000,000.00.

**COUNT 3: DUE PROCESS VIOLATIONS**

67. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

68. Sulphur Springs' Contingent Fee Contract violates Plaintiffs' rights under the Due Process Clause of the Fifth and Fourteenth Amendment of the United States Constitution. Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States or federal law.

69.     The engagement of contingency counsel deprives Plaintiffs of property without due process of law, namely a fair and ethical prosecution. The contingent-fee arrangement improperly delegates prosecutorial discretion to private attorneys, who are unrestrained by the statutory and constitutional checks on the exercise of state authority.

70.     The contingent fee-arrangement has injected personal interests, financial or otherwise into the enforcement process which has brought irrelevant and impermissible factors into the outside contingency-fee counsel's decisions based upon, among other things, race or religion.

71.     Further, the contingent-fee arrangement gives private counsel a significant stake in the outcome, resulting in the prosecution of this case being guided by the profit motivations of contingency-fee counsel, rather than the public interest or Plaintiffs' purported culpability.   This in turn has compromised the integrity of the prosecution by Sulphur Springs as well as the public's faith in the judicial process.   The right of SS Seniors and Accent Developers to their continued operations and existence has been threatened by the Sulphur Springs Lawsuit.   In addition, Plaintiffs are mismatched in their legal resources as compared to Sulphur Springs.

72.     Several provisions in the contingent-fee arrangement actually promote inefficient litigation strategies and incentivize contingency-counsel to needlessly drag the lawsuit out as long as possible so that they can seek greater amounts in attorney's fees at trial.   That is why Sulphur Springs' contingency-counsel are billing this matter at **$950/hour** and have incurred at least **$730,275.27** prior to the first deposition.[19]   The extremely high billing rate and unreasonably high attorney's fees incurred to date (in relationship to the posture of the case) is clear of evidence of

---

[19] *See* Exhibits F and G (Bates Nos. 000198-000272).

the overreaching and violation of due process by Sulphur Springs.

73.     The contingent-fee arrangement has caused the contingency-counsel to disregard the heightened standards to which a lawyer performing government functions is subject.   In addition, Sulphur Springs' City Attorney does not appear on any pleadings and did not participate at the mediation or any other hearings to date.

74.     The contingent-fee contract has caused the contingency-counsel to act improperly or with a bias other than that inherent in the adversarial system, or to otherwise act in a manner contrary to public interest.

75.     As a direct and proximate result of the Defendant's actions, coercive powers have been delegated to private lawyers having a clear, direct and substantial financial stake in the outcome of the Sulphur Springs' Lawsuit, an enforcement action that must be prosecuted in the public interest or not at all.

76.     Consequently, as a direct and proximate result of Sulphur Springs' actions under color of state law, the fairness of the enforcement action has been compromised, and, in turn, Plaintiffs' right to due process under the Fifth and Fourteenth Amendment have been infringed.

77.     The ongoing violation of Plaintiffs' right to due process has caused actual and irreparable harm and will continue causing additional harm until this Court grants the relief to which Plaintiffs are entitled.

78.     The prosecution of this case by private, for-profit, contingent-fee counsel in violation of Federal law amounts to the immediate deprivation of Plaintiffs' rights because "merely being forced to defend oneself in a [tainted] proceeding . . . is enough to 'constitute an ongoing injury." *Esso Standard Oil Co. v. Freytes*, 467 F. Supp. 2d 156, 162 (D.P.R. 2006), *aff'd*, 522 F.3d 126 (1st Cir. 2008). Therefore, a declaratory judgment and injunctive relief is appropriate.

79.     Plaintiffs request that the Court declare that the contingent-fee contract in this penalties-only enforcement action violates the due process clause of the United States Constitution, and enjoin further prosecution of this action by Sulphur Springs under a contingent-fee agreement.

80.     In addition, as a result of Sulphur Springs' conduct, Plaintiffs have sustained damages, including, but not limited to, consequential and compensatory damages, emotional distress, mental anguish, and harm to its reputation, for which they now sue.   Furthermore, because Sulphur Springs' conduct involves reckless and callous indifference to Plaintiffs' rights, as well as being motivated by evil motive or intent, Plaintiffs are entitled to punitive damages from Sulphur Springs.

**COUNT 4:     DECLARATION   THAT   THE   CONTINGENT   FEE   CONTRACT   VIOLATES  THE  SEPARATION  OF  POWERS  DOCTRINE  IN  THE   TEXAS CONSTITUTION**

81.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

82.     Texas has an explicit constitutional provision mandating the separation of powers, stating:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another, and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.

83.     Sulphur Springs' Contingent Fee Contract violates this mandate by (1) avoiding the legislative appropriations process normally necessary to prosecute an action such as this, (2) shifting public-policy making from the Legislature to unaccountable, for-profit contingent fee

attorneys, and (3) violating legislative function by diverting monies earmarked for the State's Treasury to outside lawyers, without the Legislature's approval or consent.

84.     Plaintiffs request that the Court declare that the Contingent Fee Contract runs afoul of separation of powers requirements set forth in the Texas Constitution, and enjoin further prosecution of this action by Sulphur Springs under a contingent-fee agreement.

**COUNT 5:     DECLARATION THAT THE CONTINGENT FEE CONTRACT, IF ANY, BETWEEN SULPHUR SPRINGS AND CANTEY & HANGER, LLP IS IN VIOLATION OF TEXAS LAW**

85.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

86.     Plaintiffs request that the Court: (1) declare that the Contingent Fee Contract, if any, between Sulphur Springs and Cantey & Hanger, LLP is void as it was not approved by the Texas Comptroller in violation of subchapter C of the chapter 2254 of the Government Code, section 403.0305 of the Government Code, and section 30.0003(3) of the Water Code and; (2) enjoin further prosecution of this action by Cantey & Hanger, LLP under a contingent-fee agreement.

**COUNT 6:     DECLARATION THAT THE SULPHUR SPRINGS' LAWSUIT EXCEEDS THE LIMITS OF THE AUTHORIZING STATUTE**

87.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

88.     The sole basis of Sulphur Springs' claims against Plaintiffs is under Section 7.351(a) of the Texas Water Code.[20]   Section 7.351(a) provides that:

> If it appears that a violation or threat of violation of Chapter 16, 26, or 28 of this code, Chapter 361, 371, 372, or 382, Health and Safety Code, a provision of

---

[20] *See* Exhibit D, page 2 at ¶ 3.

Chapter 401, Health and Safety Code, under the commission's jurisdiction, or Chapter 1903, Occupations Code, or a rule adopted or an order or a permit issued under those chapters or provisions has occurred or is occurring in the jurisdiction of a local government, the local government or, in the case of a violation of Chapter 401, Health and Safety Code, a person affected as defined in that chapter, may institute a civil suit under Subchapter D *in the same manner as the commission* in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by this chapter against the person who committed, is committing, or is threatening to commit the violation.[21]

89.      Thus, in order to assert any claims against Plaintiffs in the Sulphur Springs' Lawsuit, Sulphur Springs must stand in the shoes of the TCEQ: it can exercise only the authority that the statutes grant the TCEQ, and it must do so only in the "same manner" as the TCEQ would exercise that authority.   Notwithstanding this critical limitation on suits by local governments, Sulphur Springs has asserted claims in the Sulphur Springs' Lawsuit the likes of which have never been advanced in the history of Texas environmental litigation by the State of Texas through the TCEQ.

90.      For instance, Sulphur Springs claims that Plaintiffs (and others) violated the SWDA because they failed to obtain the appropriate permits for the discharge of stormwater from the Pioneer Crossing Project.[22]   In making this claim, Sulphur Springs must necessarily argue that the stormwater from the site was regulated under the TCEQ's Industrial Solid and Municipal Hazardous Waste Rules under 30 Tex. Admin. Code § 335.   However, Section 335.1(140)(a)(iv) states that "solid waste" does not include materials excluded by 40 C.F.R. §§ 261.4(a) and that provision excludes industrial wastewater discharges subject to regulation under Section 402 of the Clean Water Act.   Indeed, as asserted by Sulphur Springs itself elsewhere in its claims against

---

[21] TEX. WATER CODE § 7.351(a) (emphasis added); *see also id*. § 7.352 ("in the case of a violation of Chapter 26 … a local government may not exercise *the enforcement power authorized* by this subchapter unless its governing body adopts a resolution authorizing the exercise of the power." (emphasis added).
[22] *See* Exhibit D, page 9-12 (Bates Nos. 000180-000183).

Plaintiffs, stormwater from large construction sites is industrial wastewater subject to the Section 402 Clean Water Act permit program.   The TCEQ has never taken the position of Sulphur Springs at any construction site and it is noteworthy that the State of Texas has recently retracted its support of these claims in the Sulphur Springs' Lawsuit.

91.     Sulphur Springs also claims that the stormwater that allegedly entered the sanitary sewer system was likewise a violation of the SWDA.   Assuming, *arguendo*, that the stormwater qualified as "solid waste," the SWDA nonetheless contains a "Domestic Sewage Exclusion" which clearly states that once a substance enters a sanitary sewer system, that is part of a POTW, it is no longer qualifies as "solid waste."[23]   Once again, The TCEQ has never taken the position of Sulphur Springs at any construction site in the State of Texas.

92.     Further, when Sulphur Springs built its own municipal airport, it did not obtain the very same permits for itself that it now claims, in error, Plaintiffs should have obtained.[24]   That is additional evidence that Sulphur Springs has greatly exceeded the boundaries of the underlying statutory schemes.

93.     In addition, Sulphur Springs claims that SS Seniors, Accent Developers, and Mr. Jooma were also "primary operators" in an effort to seek $25,000/day penalty a day for failure to timely file a Notice of Intent ("NOI") for over 100 days (totaling $2,500,000) in order to obtain coverage under a stormwater permit from the TCEQ.[25]   The State of Texas disagrees with Sulphur Springs on this issue.[26]   Instead the State of Texas concluded that SS Seniors, Accent

---

[23] TEX. HEALTH & SAFETY CODE § 361.003(34)(A)(i) (the term solid waste "does not include ... solid or dis-solved material in domestic sewage").

[24] *See* Exhibit H (Bates Nos. 000273-000274).

[25] *See* Exhibit I, Sulphur Springs' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. 000275-000277).

[26] *See* Exhibit J, State of Texas' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. 000278-000281; Exhibit K, State of Texas Response to Requests for Admissions No. 69 by SS Seniors, LLC, Accent Developers,

Developers and Mr. Jooma qualify only as "secondary operators."   Under the TCEQ penalty policy, the total penalty applicable to Plaintiffs for failure to file an NOI as a secondary operator is *de minimis* – instead of $2,500,000 as claimed by Sulphur Springs' contingency-counsel.

94.     Finally, in an effort to bring in irrelevant evidence, Sulphur Springs claims that Section 7.053 of the Texas Water Code concerning the "Factors to be Considered in Determination of Penalty Amount" is applicable.[27]   The State of Texas disagrees with Sulphur Springs on this issue as well.[28]

95.     Plaintiffs request that the Court declare that Sulphur Springs has exceeded its authority to assert claims against Plaintiffs under Section 7.351(a) of the Texas Water Code and enjoin further prosecution by Sulphur Springs against Plaintiffs in the Sulphur Springs' lawsuit.

**COUNT 7:     DECLARATION THAT THE STATUTORY PENALTIES UNDER SECTION 7.351 OF THE WATER CODE ARE A FORM OF EXEMPLARY DAMAGES**

96.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

97.     Sulphur Springs does not seek economic damages, but rather statutory civil penalties under Section 7.102 of the Texas Water Code.[29]

98.     Statutory civil penalties are a form of exemplary damages.   Both in name and substance, the penalties provided by the Texas Water Code are penalties and exemplary damages.

99.     Sulphur Springs' penalty claims are barred under common law by the lack of any incurred actual damages and by the waiver of any actual damages sought.

---

LLC and Noorallah Jooma (Bates Nos. 000286-000290).
[27] *See* Exhibit L (Bates Nos. 000286-000290).
[28] *See* Exhibit M (Bates Nos. 000291-000293).
[29] *See* TEX. WATER CODE § 7.102; Exhibit D (Bates Nos. 000171-000187).

100.    The Texas common law rule has been codified in Chapter 41 of the Texas Civil Practice & Remedies Code, which provides that exemplary damages are recoverable only if damages other than nominal damages are awarded. The statutory penalties provided by the Texas Water Code are penalties and are thus subject to the Chapter 41.

101.    Section 41.002(d) provides that Chapter 41 does not apply to several listed statutes, however, the Texas Water Code is not one of them and thus is subject to its limits.

102.    Because Sulphur Springs has not suffered any actual damages, which are a necessary prerequisite for an award of statutory penalties, Plaintiffs are entitled to a declaratory judgment that Sulphur Springs take nothing by way of their statutory penalty claims against Plaintiffs in the Sulphur Springs' Lawsuit.

**COUNT 8:    EQUAL PROTECTION VIOLATIONS**

103.    Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

104.    Sulphur Springs, while acting under color of state law, have deprived Plaintiffs of rights secured by the Equal Protection Clause of the Fourteenth Amendment.  Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States or federal law.

105.    Sulphur Springs' actions in the Sulphur Springs' Lawsuit have amounted to both discriminatory and selective enforcement which are both violations of Plaintiffs' rights secured by the Equal Protection Clause of the Fourteenth Amendment.

106.    With respect to discriminatory enforcement, Sulphur Springs have singled out Mr. Jooma for individual prosecution in the Sulphur Springs' Lawsuit even though they have not

proceeded against any other individual similarly situated.   Mr. Jooma is a US citizen originally from Pakistan and was born to Muslim parents and had no involvement in his individual capacity with the construction of the site.   The selectivity of Mr. Jooma was intentional, invidious, and based on impermissible considerations such as Mr. Jooma's race and religion.   Alternatively, the decision to single out Mr. Jooma was irrational and wholly arbitrary.   In effect, an illegitimate animus or ill-will motivated Sulphur Springs to intentionally treat Mr. Jooma differently from others similarly situated and no rational basis exists for such treatment.

107.    With respect selective enforcement, Sulphur Springs has also exceeded its authority under Section 7.351(a) of the Texas Water Code.   In fact, Sulphur Springs has asserted claims in the Sulphur Springs' Lawsuit the likes of which have never been advanced in the history of Texas environmental litigation by the State of Texas through the TCEQ.

108.    For instance, Sulphur Springs claims that Plaintiffs (and others) violated the SWDA because they failed to obtain the appropriate permits for the discharge of stormwater from the Pioneer Crossing Project.[30]   In making this claim, Sulphur Springs must necessarily argue that the stormwater from the site was regulated under the TCEQ's Industrial Solid and Municipal Hazardous Waste Rules under 30 Tex. Admin. Code § 335.   However, Section 335.1(140)(a)(iv) states that "solid waste" does not include materials excluded by 40 C.F.R. §§ 261.4(a) and that provision excludes industrial wastewater discharges subject to regulation under Section 402 of the Clean Water Act.   Indeed, as asserted by Sulphur Springs itself elsewhere in its claims against Plaintiffs, stormwater from large construction sites is industrial wastewater subject to the Section 402 Clean Water Act permit program.   The TCEQ has never taken the position of Sulphur Springs

---

[30] *See* Exhibit D, page 9-12 (Bates Nos. 000180-000183).

at any construction site and it is noteworthy that the State of Texas has recently retracted its support of these claims in the Sulphur Springs' Lawsuit.

109.    Sulphur Springs also claims that the stormwater that allegedly entered the sanitary sewer system was likewise a violation of the SWDA.   Assuming, *arguendo*, that the stormwater qualified as "solid waste", the SWDA nonetheless contains a "Domestic Sewage Exclusion" which clearly states that once a substance enters a sanitary sewer system, that is part of a POTW, it is no longer qualifies as "solid waste."[31]   Once again, The TCEQ has never taken the position of Sulphur Springs at any construction site in the State of Texas.

110.    Further, when Sulphur Springs built its own municipal airport, it did not obtain the very same permits for itself that it now claims, in error, Plaintiffs should have obtained.   That is additional evidence that Sulphur Springs has greatly exceeded the boundaries of the underlying statutory schemes.

111.    In addition, Sulphur Springs claims that SS Seniors, Accent Developers, and Mr. Jooma were also "primary operators" in an effort to seek $25,000/day penalty a day for failure to file timely file a Notice of Intent ("NOI") for over 100 days (totaling $2,500,000) in order to obtain coverage under a stormwater permit from the TCEQ.[32]   The State of Texas disagrees with Sulphur Springs on this issue.[33]   Instead the State of Texas concluded that SS Seniors, Accent Developers and Mr. Jooma qualify only as "secondary operators."   Under the TCEQ penalty policy, the total penalty applicable to Plaintiffs for failure to file an NOI as a secondary operator

---

[31] TEX. HEALTH & SAFETY CODE § 361.003(34)(A)(i) (the term solid waste "does not include ... solid or dis-solved material in domestic sewage").

[32] *See* Exhibit I, Sulphur Springs' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. 000275-000277).

[33] *See* Exhibit J, State of Texas' Supplemental Responses to Interrogatories Nos. 8-10 (Bates Nos. 000278-000281; Exhibit K, State of Texas Response to Requests for Admissions No. 69 by SS Seniors, LLC, Accent Developers, LLC and Noorallah Jooma (Bates Nos. 000286-000290).

is *de minimis* – instead of $2,500,000 as claimed by Sulphur Springs' contingency-counsel.

112.    Finally, in an effort to bring in irrelevant evidence, Sulphur Springs claims that Section 7.053 of the Texas Water Code concerning the "Factors to be Considered in Determination of Penalty Amount" is applicable.[34]    The State of Texas disagrees with Sulphur Springs on this issue as well.[35]

113.    The selective enforcement referenced above was intentional, invidious, and based on impermissible considerations such as race and religion.   Alternatively, the decision to single out the Plaintiffs with these claims was irrational and wholly arbitrary.   In effect, an illegitimate animus or ill-will motivated Sulphur Springs to intentionally treat Plaintiffs differently from others similarly situated and no rational basis exists for such treatment.

114.    Plaintiffs request that the Court declare that Sulphur Springs' actions in the Sulphur Springs' Lawsuit have amounted to both discriminatory and selective enforcement which are both violations of Plaintiffs' rights secured by the Equal Protection Clause of the Fourteenth Amendment and to enjoin further prosecution by Sulphur Springs against Plaintiffs in the Sulphur Springs' lawsuit.

115.    In addition, as a result of Sulphur Springs' conduct, Plaintiffs have sustained damages, including, but not limited to, consequential and compensatory damages, emotional distress, mental anguish, and harm to its reputation, for which they now sue.   Furthermore, because Sulphur Springs' conduct involves reckless and callous indifference to Plaintiffs' rights, as well as being motivated by evil motive or intent, Plaintiffs are entitled to punitive damages from Sulphur Springs.

---

[34] *See* Exhibit L (Bates Nos. 000286-000290).
[35] *See* Exhibit M (Bates Nos. 000291-000293).

## VI.
## JURY DEMAND

116.    Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all factual issues raised in this action.

## VII.
## ATTORNEY'S FEES

117.    Plaintiffs have retained counsel to defend itself against the Sulphur Springs' civil penalties enforcement action and to represent them in this action. The controlling substantive law of this case allows for the recovery of attorney's fees, therefore, the Court has the discretion to award costs and attorneys' fees as part of a declaratory judgment.   An award of reasonable and necessary attorney's fees to Plaintiffs would be equitable and just under these circumstances.

## VII.
## REQUEST FOR RELIEF

118.    WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in its favor and against Sulphur Springs granting the following relief:

a.    Enter a declaratory judgment that Sulphur Springs has violated and is in violation of the CWA, 33 U.S.C. §§ 1311(a) and 1342;

b.    Order or Enjoin Sulphur Springs to cease the discharge of pollutants from point sources into waters of the United States without an NPDES Permit WQ0010372001;

c.    Order Sulphur Springs to comply with all terms and conditions of coverage under its NPDES Permit WQ0010372001;

d.    Order Sulphur Springs to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of the CWA set out in this Complaint, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d) and 1365(a);

e.    Award Plaintiff SS Seniors its costs, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d);

f.    Enter a declaratory judgment that Sulphur Springs' Contingent Fee Contract with outside counsel violates Plaintiffs' constitutional rights to due process;

g.    Enter a declaratory judgment that Sulphur Springs' Contingent Fee Contract with outside counsel violates the separation of powers mandate in the Texas Constitution;

h.    Enter a declaratory judgment that Sulphur Springs' Contingent Fee Contract with Cantey & Hanger, LLP is in violation of Texas Law and is void;

i.    Order or Enjoin Sulphur Springs from employing contingency-fee counsel in violation of Texas Government Code Section 403.0305 and Subchapter C of Chapter 2254, Plaintiffs' constitutional due process rights, and Texas' separation of powers doctrine;

j.    Order or Enjoin Sulphur Springs from further prosecution of the Sulphur Springs' Lawsuit, in whole or in part, with contingent-fee counsel;

k.    Enter a declaratory judgment that Sulphur Springs' Lawsuit exceed the limits of the authorizing statute;

l.    Enter a declaratory judgment that the statutory penalties under Section 7.351 of the Texas Water Code are a form of exemplary damages and since Sulphur Springs has not suffered any actual damages in the Sulphur Springs' Lawsuit, Sulphur Springs should take nothing against the Plaintiffs;

m.    Enter a declaratory judgment that Sulphur Springs' actions in the Sulphur Springs' Lawsuit have amounted to both discriminatory and selective enforcement which are both violations of Plaintiffs' rights secured by the Equal Protection Clause of the Fourteenth Amendment;

n.    Awarding Plaintiffs its reasonable costs incurred in bringing this action, including attorneys' fees;

o.    Awarding Plaintiffs consequential and compensatory damages for emotional distress, mental anguish, and harm to Plaintiffs' reputation;

p.    Awarding Plaintiffs' punitive damages, as authorized by 42 U.S.C. § 1983, in an amount reasonable and appropriate; and

q.    Awarding such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff prays for the relief requested above, for costs, attorneys' fees, and

interest as allowed by law and for general relief.

Respectfully submitted,

**GUIDA, SLAVICH & FLORES, P.C.**

/s/ Michael R. Goldman
Michael R. Goldman
State Bar No. 24025383
750 N. St. Paul Street, Suite 200
Dallas, Texas   75201
Telephone:     (214) 692-0009
Facsimile:      (214) 692-6610
Email:          goldman@gsfpc.com

**ATTORNEY FOR PLAINTIFFS
SS SENIORS, LLC, ACCENT
DEVELOPERS, LLC AND
NOORALLAH JOOMA**

49510